WO         IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CHRISTINE HARRISON,<br><br>                   Plaintiff,<br><br>   vs.<br><br>COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION,<br><br>                 Defendant.<br>_____ | No. 3:13-cv-8177-HRH |

O R D E R

This is an action for judicial review of the denial of disability benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-434, 1381-1383f. Plaintiff has timely filed her opening brief,[1] to which defendant has responded.[2]  Oral argument was not requested and is not deemed necessary.

Procedural Background

Plaintiff is Christine Harrison.  Defendant is the Commissioner of the Social Security Administration.

---

[1]Docket No. 14.

[2]Docket No. 15.

On February 26, 2010, plaintiff filed applications for disability benefits under Title II and Title XVI of the Social Security Act, alleging that she became disabled on June 10, 2009. Plaintiff alleged that she was disabled because of bipolar disorder, depression, anxiety, and carpal tunnel syndrome. Plaintiff's applications were denied initially and upon reconsideration. After a hearing on March 20, 2012, an administrative law judge (ALJ) denied plaintiff's claim. On May 16, 2013, the Appeals Council denied plaintiff's request for review, thereby making the ALJ's April 27, 2012 decision the final decision of the Commissioner. On July 10, 2013, plaintiff commenced this action in which she asks the court to find that she is entitled to disability benefits.

## General Factual Background

Plaintiff was born on March 5, 1961. She was 51 years old at the time of the hearing. Plaintiff has one teen-age son living at home. Plaintiff has a GED and took a licensed practical nurse course while she was in the military. She also completed training in medical transcription. Plaintiff's past relevant work was as an LPN and a medical transcriptionist.

## The ALJ's Decision

The ALJ first determined that plaintiff met "the insured status requirements of the Social Security Act through September 15, 2015."[3]

---

[3] Admin. Rec. at 10.

The ALJ then applied the five-step sequential analysis used to determine whether an individual is disabled.[4]

At step one, the ALJ found that plaintiff has "engaged in substantial gainful activity during the following periods: June 2009 through January 2010...."[5] The ALJ noted that plaintiff "reported that she continued to work as a licensed practical nurse from July 10, 2009 until January 15, 2010."[6] Although plaintiff maintained "that her hours were reduced due to

---

[4]The five steps are as follows:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
> Step two: Is the claimant's alleged impairment sufficiently severe to limit ... her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R., pt. 404, subpt. P, app. 1? If so, the claimant is disabled. If not, proceed to step four.
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform ... her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow ... her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006).

[5]Admin. Rec. at 10.

[6]Admin. Rec. at 10.

her limitations from her medical condition, ... she indicated that she continued to earn over $980 a month until she left this position on January 15, 2010...."[7] Because plaintiff's "earning record on file with the Social Security Administration confirm[ed] that [plainitff's] earnings for 2009 were well above the level of substantial gainful activity[,]" the ALJ found that plaintiff "engaged in substantial gainful activity from her alleged onset date until January 15, 2010."[8] However, the ALJ found that "there has been a continuous 12-month period[] during which [plaintiff] did not engage in substantial gainful activity" so she continued with the next steps of the sequential analysis to determine if plaintiff was disabled after January 15, 2010.[9]

At step two, the ALJ found that plaintiff had "the following severe impairments: depression and bipolar disorder, mixed...."[10] The ALJ found plaintiff's asthma and allergic rhinitis non-severe because plaintiff reported to treating sources that "her asthma 'hardly ever bothers me....'"[11] The ALJ found plaintiff's stress incontinence non-severe because "the record does not confirm any treatment for this impairment since [plaintiff's] alleged onset date."[12] The ALJ found plaintiff's musculoskeletal impairments non-severe "[g]iven the limited

---

[7]Admin. Rec. at 10.

[8]Admin. Rec. at 10-11.

[9]Admin. Rec. at 11.

[10]Admin. Rec. at 11.

[11]Admin. Rec. at 11.

[12]Admin. Rec. at 11.

medical findings and limited treatment[.]"[13]  The ALJ also found plaintiff's carpal tunnel syndrome non-severe because "the record does not evidence any treatment for this impairment or any findings confirming persistent limitations due to carpal tunnel syndrome."[14]

At step three, the ALJ found that plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1...."[15]  The ALJ considered Listing 12.00 for Mental Disorders and Listing 12.04 for Affective Disorders.  The ALJ considered the "paragraph B" criteria and found that plaintiff had mild restrictions in activities of daily living, mild difficulties in social functioning, and moderate difficulties with regard to concentration, persistence, or pace.[16]  The ALJ also found that plaintiff had had no episodes of decompensation, which had been of extended duration.[17]

"Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's RFC."  Bray v. Comm'r Soc. Sec. Admin., 554 F.3d 1219, 1222-23 (9th Cir. 2009).  The ALJ found that plaintiff had

---

[13] Admin. Rec. at 11.

[14] Admin. Rec. at 11.

[15] Admin. Rec. at 11.

[16] Admin. Rec. at 12.

[17] Admin. Rec. at 12.

>   the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [plaintiff] can understand, remember, carry out simple instructions, but not detailed or complex; can make work decision[s], interact appropriately and respond to usual work changes.[18]

The ALJ found plaintiff's statements "concerning the intensity, persistence, and limiting effects" of her mental impairments less than credible.[19] First, the ALJ noted that plaintiff "has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations."[20] Second, the ALJ noted that plaintiff "has reported activ[ely] looking for work several times during the period under consideration."[21] Third, the ALJ noted that plaintiff "has been prescribed and has taken appropriate medications for the alleged impairments, which weighs in [her] favor, but the medical records reveal that the medications have been relatively effective in controlling [plaintiff's] symptoms."[22] Fourth, the ALJ noted that plaintiff "cancelled or failed to show up for doctor appointments on a number of occasions and there is evidence that [she] has not been entirely compliant in taking prescribed medications, which suggests that the symptoms

---

[18]Admin. Rec. at 13.

[19]Admin. Rec. at 14.

[20]Admin. Rec. at 14.

[21]Admin. Rec. at 14.

[22]Admin. Rec. at 14.

may not have been as limiting as [plaintiff] has alleged...."[23]  Fifth, the ALJ found that "examination findings do not confirm the limitations alleged by" plaintiff.[24]  Sixth, the ALJ found that plaintiff had "provided conflicting information regarding why she stopped working."[25]

The ALJ gave little weight to the opinion of plaintiff's daughter[26] "because the severity of the claimant's symptoms, as described by her daughter, is not confirmed by evidence of record."[27]

In assessing the limitations that flowed from plaintiff's mental impairments, the ALJ gave little weight to Dr. Sadowski's opinion.[28]  The ALJ gave this opinion little weight

---

[23]Admin. Rec. at 14-15.

[24]Admin. Rec. at 15.

[25]Admin. Rec. at 15.

[26]Plaintiff's daughter, Shaunna Sanchez, completed a third-party function report on March 26, 2010.  Admin. Rec. at 229-236.

[27]Admin. Rec. at 15.

[28]On January 24, 2012, Dr. Artur Sadowski signed off on an opinion that had been rendered by Physician Assistant Joan Barnes, plaintiff's VA mental health prescriber. Admin. Rec. at 737. Barnes opined that plaintiff had a good ability to follow work rules, deal with the public, and interact with supervisors; had a fair ability to function independently, relate to co-workers, and use judgment; and a poor ability to deal with work stresses and maintain attention/concentration. Admin. Rec. at 736. Barnes opined that plaintiff had a fair ability to understand, remember, and carry out detailed, but not complex, job instructions; a good ability to understand, remember, and carry out simple job instructions; and a fair ability to maintain personal appearance, relate predictably in social situations, and behave in an
(continued...)

"because the treating relationship between this physician and [plaintiff] is unclear."[29] "At the hearing, [plaintiff] testified that she did not know who this physician was, indicating that she is primarily treated by Ms. Barnes, a physician assistant."[30] The ALJ also found that the medical evidence of record did not corroborate the limitations found by Dr. Sadowski.[31] The ALJ gave great weight to Dr. Chatel's[32] opinion because it was consistent with his examination results.[33] The ALJ gave significant weight to Dr. Gill's[34] opinion, even though

---

[28](...continued)
emotionally stable manner; and a poor ability to demonstrate reliability. Admin. Rec. at 737.

[29]Admin. Rec. at 16.

[30]Admin. Rec. at 16.

[31]Admin. Rec. at 16.

[32]On May 8, 2010, Daniel M. Chatel, Ph.D., examined plaintiff. Dr. Chatel found that

> the claimant meets DSM-IV-TR diagnostic criteria for Bipolar Disorder NOS; Generalized Anxiety Disorder; and Panic Disorder w/o Agoraphobia. The severity of Ms. Harrison's condition is felt to be moderate overall and her level of functioning varies significantly depending upon where she is in her bipolar cycle, how much stress she is experiencing at any given time, and how compliant she is with her mental health treatment. Results of the present evaluation indicate that the claimant's mental health difficulties alone do not preclude her participation in substantial employment activities.

Admin. Rec. at 352-353.

[33]Admin. Rec. at 17.

[34]Stephen Gill, Ph.D., evaluated plaintiff on November 30, 2010, and opined that
(continued...)

the ALJ found plaintiff more limited than Dr. Gill did.[35]  The ALJ also gave significant weight[36] to the opinions of Dr. Yandell[37] and Dr. Lazorwitz,[38] even though the ALJ found plaintiff more limited than Dr. Yandell and Dr. Lazorwitz did.

In assessing the limitations that flowed from plaintiff's physical impairments, the ALJ gave great weight to Dr. Brecheisen's[39] opinion.  The ALJ gave Dr. Brecheisen's opinion great weight because it was consistent with his examination results.[40]  The ALJ also gave great

---

[34](...continued)
plaintiff did not have a condition that would impose any limitations for 12 months. Admin. Rec. at 423.

[35] Admin. Rec. at 17.

[36] Admin. Rec. at 17.

[37] On June 1, 2010, David Yandell, Ph.D., opined that plaintiff had no restrictions of activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. Admin. Rec. at 71.  Dr. Yandell also opined that plaintiff's mental impairments were "not[] of such severity so as to prevent, or to have prevented, [plaintiff] from engaging in SGA within twelve months after onset."  Admin. Rec. at 71.

[38] On November 24, 2010, Nicole Lazorwitz, Psy.D., opined that plaintiff had mild restrictions of activities of daily living; no difficulties in maintaining social functioning; no difficulties in maintaining concentration, persistence, or pace; and no repeated episodes of decompensation. Admin. Rec. at 83.  Dr. Lazorwitz also opined that plaintiff's mental health symptoms "appear to continue to cause no more than minimal impact on her functioning" and thus were non-severe.  Admin. Rec. at 84.

[39] Mark Brecheisen, DO, examined plaintiff on April 20, 2010 and opined that plaintiff's conditions would not impose limitations for 12 continuous months.  Admin. Rec. at 349.

[40] Admin. Rec. at 16.

weight[41] to the opinions of Dr. Schenk[42] and Dr. Griffith[43] because these opinions were "consistent with the consultative examination findings as well as the claimant's conservative course of treatment."[44] The ALJ gave little weight to Dr. Wilburg-Bourne's[45] opinion because the limitations found by Dr. Wilburg-Bourne were "not confirmed by the examination findings in the record" and because "the extent of the claimant's treating relationship with this physician is unclear."[46]

At step four, the ALJ found that plaintiff was unable to perform any of her past relevant work.[47]

---

[41] Admin. Rec. at 17.

[42] On May 17, 2010, Paul Schenk, M.D., opined that plaintiff's physical impairments were non-severe. Admin. Rec. at 70.

[43] On December 22, 2010, Ernest Griffith, M.D., opined that plaintiff's physical and mental impairments were non-severe. Admin. Rec. at 86.

[44] Admin. Rec. at 17.

[45] Dr. Joan Wilburg-Bourne, a VA physician, treated plaintiff for her physical impairments. On February 3, 2012, Dr. Wilburg-Bourne opined that plaintiff could occasionally lift/carry 10 pounds; frequently lift/carry 5 pounds; could stand/walk less than 1 hour; could sit 2 hours; needs to alternate sitting and standing every 1-2 hours; could frequently climb, kneel, and crawl; could occasionally balance, stoop, and crouch; was unlimited as to reaching, seeing, hearing, and speaking; was limited as to handling, fingering, and feeling; was restricted as to working around moving machinery, temperature extremes, and dust; and had no restrictions as to working around heights, heat, chemicals, and noise. Admin. Rec. at 738-739.

[46] Admin. Rec. at 16.

[47] Admin. Rec. at 17.

At step five, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the claimant can perform...."[48] The ALJ used section 204.00 of the Medical-Vocational Guidelines to make her step-five decision because plaintiff has only nonexertional limitations.[49] Because plaintiff's nonexertional limitations "have little or no effect on the occupational base of unskilled work at all exertional levels[,]" the ALJ stated that "[a] finding of 'not disabled' is ... appropriate under the framework of section 204.00 in the Medical-Vocational Guidelines."[50]

Based on the five-step sequential analysis, the ALJ concluded that plaintiff "has not been under a disability, as defined in the Social Security Act, from June 10, 2009 through the date of this decision...."[51]

Standard of Review

Pursuant to 42 U.S.C. § 405(g), the court has the "power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner...." The court "properly affirms the Commissioner's decision denying benefits if it is supported by substantial evidence and based on the application of correct legal standards." Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997). "Substantial evidence is

---

[48] Admin. Rec. at 18.

[49] Admin. Rec. at 18.

[50] Admin. Rec. at 18.

[51] Admin. Rec. at 18.

'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995)). "'To determine whether substantial evidence supports the ALJ's decision, [the court] review[s] the administrative record as a whole, weighing both the evidence that supports and that which detracts from the ALJ's conclusion.'" Id. If the evidence is susceptible to more than one reasonable interpretation, the court must uphold the Commissioner's decision. Id. But, the Commissioner's decision cannot be affirmed "'simply by isolating a specific quantum of supporting evidence.'" Holohan v. Massanari, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999)).

Discussion

Plaintiff first argues that the ALJ erred in ignoring the vocational expert's testimony that a person with the limitations in the January 24, 2012 opinion by Dr. Sadowski and Physician Assistant Barnes would be precluded from all work. Dr. Sadowski countersigned a "Mental Ability to Do Work-Related Activities " form that was completed by Physician Assistant Joan Barnes[52] on January 24, 2012. PA Barnes opined that plaintiff had a good ability to follow work rules, deal with the public, and interact with supervisors; had a fair

---

[52]In her briefing, plaintiff confuses PA Joan Barnes with Dr. Joan Wilburg-Bourne, who treated plaintiff for her physical impairments. The ALJ also gave Wilburg-Bourne's opinion little weight, but it was Barnes' opinion that was countersigned by Dr. Sadowski and it was Barnes' opinion that the ALJ had the vocational expert consider.

ability to function independently, relate to co-workers, and use judgment; and a poor ability to deal with work stresses and maintain attention/concentration.[53] Barnes also opined that plaintiff had a fair ability to understand, remember, and carry out detailed, but not complex, job instructions; and a good ability to understand, remember, and carry out simple job instructions.[54] She also opined that plaintiff had a fair ability to maintain personal appearance, relate predictably in social situations, and behave in an emotionally stable manner; and a poor ability to demonstrate reliability.[55] The vocational expert testified that someone with these limitations would not be able to perform any work.[56] The ALJ did not mention the vocational expert's testimony, presumably because the ALJ gave little weight to the January 24, 2012 opinion.

To the extent that plaintiff is arguing that it was error for the ALJ to not discuss the vocational expert's testimony, that argument fails. The ALJ did not find that plaintiff had the limitations expressed in the January 24, 2012 opinion; thus, there was no reason for the ALJ to discuss this testimony. See Robbins v. Social Sec. Admin., 466 F.3d 880, 886 (9th Cir. 2006) ("in hypotheticals posed to a vocational expert, the ALJ must only include those limitations supported by substantial evidence").

---

[53]Admin. Rec. at 736.

[54]Admin. Rec. at 737.

[55]Admin. Rec. at 737.

[56]Admin. Rec. at 55.

To the extent that plaintiff is arguing that it was error for the ALJ to give Dr. Sadowski's opinion little weight, that argument also fails. Plaintiff argues that the ALJ should have given the January 24, 2012 opinion controlling weight because it was the opinion of a treating medical source. "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995).

The problem with this argument is that the January 24, 2012 opinion was not Dr. Sadowski's opinion, but rather PA Barnes' opinion. A physician assistant is not an "acceptable medical source" but rather an "other source." Opinions from "other sources" can be accorded "less weight than opinions from acceptable medical sources." Gomez v. Chater, 74 F.3d 967, 970–71 (9th Cir. 1996). Plaintiff contends that it is obvious that Dr. Sadowski agreed with Barnes' opinion and that he was Barnes' supervisor, but there is nothing in the record that indicates that Dr. Sadowski supervised Barnes or was involved in plaintiff's mental health treatment in any way. Dr. Sadowski's signature on the mental capacities form does not transform Barnes' opinion into evidence from an "acceptable medical source" because the opinion was based on Barnes' treatment of plaintiff, not Dr. Sadowski's treatment of plaintiff. See Garcia v. Astrue, Case No. 1:10-CV-00542-SKO, 2011 WL 3875483, at *15 (E.D. Cal. Sept. 1, 2011) (doctor's signature on reports authored by physician assistant did not transform reports into evidence from an "acceptable medical source" when the physician assistant prepared the reports following his examination of claimant). Moreover, '"[t]here

is no provision for a physician assistant to become an acceptable medical source when supervised by a physician or as part of an interdisciplinary team.'" Casner v. Colvin, 958 F. Supp. 2d 1087, 1097 (C.D. Cal. 2013) (quoting Farnacio v. Astrue, No. 11–CV065–JPH, 2012 WL 4045216, at *6 (E.D. Wash. Sept. 12, 2012)). Thus, the ALJ was not required to give PA Barnes' opinion controlling weight because it was not an opinion from an acceptable medical source.

The ALJ may reject opinions from "other sources" by giving "'reasons germane to each witness for doing so.'" Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) (quoting Turner v. Comm'r of Soc. Sec., 613 F.3d 1217, 1224 (9th Cir. 2010)). The ALJ gave the January 24, 2012 opinion little weight "because the treating relationship between this physician [Dr. Sadowski] and the claimant is unclear" and because "records do not corroborate these limits[.]"[57] The first reason is not valid because the ALJ plainly missed the fact that the January 24, 2012 form had been completed by PA Barnes and that Dr. Sadowski had only signed the opinion. The second reason given by the ALJ was germane to Barnes' opinion. The ALJ rejected the January 24, 2012 opinion because the record did not support the limitations found by Barnes. In particular, the ALJ mentioned that plaintiff "can function independently and appropriately in her home and outside her home, can babysit and make decision[s] about her grandchil-

---

[57]Admin. Rec. at 16.

dren's safety, she travels, and she maintains relationships."[58]  And as defendant points out, many of plaintiff's mental status exams showed that she was alert and oriented, had normal rate and tone of speech, appropriate eye contact, and intact insight.[59]  The record also indicates that plaintiff's psychiatric medication was effective as long as she was compliant.[60] Because the record as a whole does not support Barnes' opinion, the ALJ did not err in rejecting Barnes' opinion.

Plaintiff next argues that the ALJ erred in giving Dr. Chatel's opinion great weight. Dr. Chatel opined that plaintiff's understanding and memory was not significantly impaired, that her sustained concentration and attention was not significantly impaired, that her social interaction was not significantly impaired, and that her adaptation was not impaired.[61]  Dr. Chatel concluded that plaintiff did not have any mental impairments that would impose any limitations for 12 months.[62]  The ALJ gave great weight to Dr. Chatel's opinion because it was consistent with his examination.[63]  Plaintiff concedes that Dr. Chatel's opinion was consistent with his examination but contends that it is unclear why such a fact would add weight to Dr.

---

[58]Admin. Rec. at 16.

[59]Admin. Rec. at 352, 372-373, 430, 432, & 434-435.

[60]Admin. Rec. at 371-372, 419, 429, & 431.

[61]Admin. Rec. at 354.

[62]Admin. Rec. at 354.

[63]Admin. Rec. at 17.

Chatel's opinion beyond making such statements logically sufficient in drawing a conclusion. Plaintiff then argues that Dr. Chatel's opinion should not have been given great weight because his report and opinion are inconsistent with the medical record as a whole, because he failed to indicate what objective or subjective evidence his opinion was based on, and because he assessed a GAF score of 50 for plaintiff, which indicates an inability to work.

Contrary to plaintiff's contention, Dr. Chatel did indicate what he reviewed in order to reach his opinion. He indicated that his opinion was based on his examination of plaintiff, plaintiff's function report, and plaintiff's VA treatment notes.[64] As for the GAF score, "[t]he Social Security Administration has clarified that the GAF scale 'does not have a direct correlation to the severity requirements in our mental disorders listings.'" Calkin v. Colvin, Case No. 6:12–CV–01706–SI, 2014 WL 1343444, at *8 (D. Or. April 3, 2014) (quoting Cowen v. Comm'r of Soc. Sec., 400 Fed. App'x 275, 277 n. 1 (9th Cir. 2010)). "Moreover, the American Psychiatric Association abandoned the GAF scale in its most recent revision to the Diagnostic and Statistical Manual of Mental Disorders...." Id. Thus, plaintiff's GAF score of 50 has little probative value. Id. And, Dr. Chatel's opinion is consistent with the record as a whole. While the record shows that plaintiff suffered from bipolar disorder and anxiety, three acceptable medical sources besides Dr. Chatel opined that plaintiff had no limitations flowing from her mental impairments. Plaintiff often had no acute findings on her mental status

---

[64]Admin. Rec. at 350.

exams. And, as defendant points out, plaintiff's own reports indicated that she required no special reminders to care for her personal needs, to take medication, or to go places; and that she could go places alone; manage her personal finances; pay attention a "normal time", complete tasks, and understand and follow simple instructions.[65] The ALJ did not err in giving Dr. Chatel's opinion great weight.

Plaintiff also argues that it was error for the ALJ to give Dr. Gill's opinion more weight that PA Barnes' opinion. Dr. Gill opined that plaintiff did not have any mental impairments that would impose any limitations for 12 months.[66] To the extent that the ALJ may have erred in giving Dr. Gill's opinion significant weight, that error would be harmless because the ALJ found plaintiff more limited than Dr. Gill.[67] See Vasquez v. Colvin, Case No. CV–12–02486-PHX-BSB, 2014 WL 65305, at *12 (D. Ariz. Jan. 8, 2014) ("any error in assigning more weight to Dr. Schenk's opinion was harmless because the ALJ found Plaintiff more limited than Dr. Schenk's assessment").

Plaintiff also argues that the ALJ erred as to the weight she gave the opinions of Drs. Brecheisen, Griffith, Schenk, and Wilburg-Bourne. But, the ALJ only considered these opinions when assessing plaintiff's physical capacities. Because plaintiff makes no argument that the ALJ failed to include any limitations that flowed from her physical impairments in

---

[65] Admin. Rec. at 213-216.

[66] Admin. Rec. at 423.

[67] Admin. Rec. at 17.

her RFC, even if the ALJ erred as to any of these physicians' opinions, the error would be harmless.  See Stout, 454 F.3d at 1054-55 (error is harmless if it is not "prejudicial" or is "irrelevant" to the ultimate disability conclusion).

## Conclusion

Based on the foregoing, the decision of the Commissioner is affirmed.  The clerk of court shall enter judgment dismissing plaintiff's complaint with prejudice.

DATED at Anchorage, Alaska, this 16th day of April, 2014.

/s/ H. Russel Holland
United States District Judge